UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

| | |
|---|---|
| ERIK SALAIZ,<br><br>Plaintiff,<br><br>v.<br><br>GROVES CAPITAL, INC., a California Corporation<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ EP22CV0300 |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant GROVES CAPITAL, INC ("Groves" "Defendant") is a corporation organized and existing under the laws of California with its principal office located at 4080 Centre, Suite 206, San Diego, California and is a Texas foreign corporation and can be served via registered agent Paracorp Incorporated at 14001 W Hwy 29, Suite 102, Liberty Hill, Texas 78642.

### NATURE OF ACTION

3. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . ... For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

4. Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant Groves telemarketers and agents placed illegal unauthorized telemarketing phone calls to him in violation of the TCPA.

5. Defendant Groves offers mortgage refinance loans and cash out options to consumers. As part of marketing their services, Defendant Groves hired and authorized telemarketers to place illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

6. Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

7. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

8. This Court has supplemental subject matter jurisdiction over Plaintiff's claims arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

9. This Court has personal jurisdiction over Defendant Groves because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant Groves regularly conducts business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

11. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

20. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21. The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22. Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

23. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS:

24. Plaintiff's personal cell phone number (915) 540-5210 has been successfully registered on the National Do-Not-Call Registry since June 1, 2021.

25. Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

26. Defendant Groves hires and authorizes telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an ATDS to solicit mortgage refinance loans and cash out options on behalf of Defendant Groves.

5

27. Each and every phone call Plaintiff received from telemarketers calling on behalf of Defendant Groves were made using an ATDS.

28. Defendant Groves approves of the contracts with these telemarketers.

29. Defendant Groves pay the telemarketers out of bank accounts they own and control.

30. Defendant Groves is well aware that the unauthorized phone calls being made on their behalf soliciting their mortgage refinance loans and cash out options violate the TCPA.

31. Defendant Groves knowingly and willfully violate the TCPA because doing so benefits them financially when consumers get approved for their mortgage refinance loans and cash out options.

32. Plaintiff received at least five (5) illegal unauthorized phone calls ("the calls") to his personal cell phone (915) 540-5210 within a seven-day period from telemarketers calling on behalf of Defendant Groves soliciting mortgage refinance loans and cash out options.

33. Each and every phone call Plaintiff received from or on behalf of Defendant Groves was generated from an ATDS.

34. With information and belief Plaintiff received more calls from or on behalf of Defendant Groves within the past two years that are unknown to Plaintiff at this time and will be revealed during discovery.

35. On February 14, 2022, Plaintiff received one of multiple calls to his personal cell phone (915) 540-5210 from a telemarketer calling on behalf of Defendant Groves from (541) 348-5401.

36. Plaintiff answered and there was a 3-4 second delay before being connected to a female telemarketer named Grace calling on behalf of Defendant Groves.

37. Grace advised Plaintiff Grace that she was calling from "mortgage saving center."

38. Defendant Groves trains their telemarketers not to reveal their true identity until a consumer gets approved for their mortgage refinance loans or cash out options in order to duck liability for violating the TCPA.

39. Grace asked Plaintiff if he was still paying on his mortgage balance because if he was then they can provide Plaintiff an option to lower his interest rate and help with a cash out option.

40. Plaintiff was extremely annoyed and frustrated for continuing to receive the same phone calls from telemarketers soliciting mortgage refinance loans or cash out options and advised Grace that he was interested for the sole purpose of identifying the company responsible for the calls.

41. Grace then advised Plaintiff she just had some qualifying questions and asked Plaintiff about his mortgage interest rate, mortgage balance, monthly mortgage payment and credit score.

42. Grace advised Plaintiff he was prequalified and advised Plaintiff she was going to him to her verification officer.

43. Plaintiff asked grace how they got his phone number and Grace stated,

> "This is actually a system generator sir so it's like uh it pops up on our end and then uhm once the uhm system dials a number were going to check with them if uh their going to like refinance or interested for mortgage uh I mean for any cash out but we have to pre-qualify you first we're the pre-qualifier actually and uhm it's a system generated."

Plaintiff then asked Grace if they use a dialer system to call out and grace stated,

> "yes yes yes correct, it's a system generated that's why when you look on your uhm caller id uhm there is no like uh the caller id is not registered as what exactly is the uhm address that's because uh that's a system generated but once we pre-qualify you uhm we will like if we can find the best lenders for you and we will transfer you to the best lenders and then they will be the one who will uhm once you talk to them you can go ahead and call them back if you get their number cause their the one who has a callback number and that will be your local mortgage company."

Plaintiff then asked Grace if they find clients for the mortgage companies and grace stated,

7

"yes yes because we're the third-party company"

44. Grace then transferred Plaintiff to a representative named Angel who advised Plaintiff she was the "quality control manager" for mortgage clients.

45. Angel then verified Plaintiff's mortgage information, personal information, and employment status.

46. Angel then transferred Plaintiff to a represented from Defendant Groves named Salvador Amezcua who advised Plaintiff he was the branch manager.

47. Salvador guaranteed Plaintiff he would lower Plaintiff's mortgage interest rate and get him approved for a cash out option.

48. Salvador solicited Plaintiff for a mortgage refinance loan and cash out option on behalf of Defendant Groves.

49. Plaintiff asked Salvador to email his information and he would call him back if he was interested in their services.

50. Plaintiff received an email from Salvador from sal.amezcua@grovescapital.com which revealed the company responsible for allowing telemarketers to call Plaintiff's personal cell phone soliciting mortgage refinance loans and cash out options on behalf of Defendant Groves. *See Exhibit A.*

51. Plaintiff has never had an established business relationship with Defendant Groves and did not give his prior express written consent to receive any of the alleged phone calls from or on behalf of Defendant Groves.

52.     Table A below summarizes the phone calls Plaintiff received from telemarketers calling on behalf of Defendant Groves:

Table A:

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 02/08/2022 | 11:24 AM | 361-257-1698 | Male telemarketer from mortgage saving center |
| 2 | 02/08/2022 | 1:37 PM | 254-318-3987 | Male telemarketer from mortgage saving center |
| 3 | 02/09/2022 | 11:56 AM | 325-246-1654 | Male telemarketer from mortgage saving center |
| 4 | 02/10/2022 | 11:13 AM | 409-735-1470 | Female telemarketer from mortgage saving center |
| 5 | 02/14/2022 | 10:26 AM | 315-501-6457 | Telemarketer Grace from mortgage saving center. Transferred to Salvador from Groves Capital. |

53.     Defendant Groves employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

54.     Defendant Groves and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators, and then placed phone calls using an ATDS *en masse* to market their mortgage refinance loans and cash out options.

55.     Defendant Groves have knowledge of and have adopted and maintained TCPA violations as a sales strategy. Defendant Groves knew full well that offshore telemarketers are calling and harassing consumers in an attempt to procure business on behalf of the Defendant Groves. Defendant Groves willfully accepts these referrals and compensate the telemarketers for their illegal phone calls.

56.     No emergency necessitated none of the alleged phone calls.

57.     Plaintiff sent an internal do-not-call policy request to Defendant Groves to email

9

ceo@grovescapital.com on August 22, 2022 which is listed on their Facebook social media page they own and control https://www.facebook.com/grovescapital/.

58. Despite this e-mail, Defendant Groves failed and/or refused to send Plaintiff a do-not-call policy.

59. Upon information and belief, the Defendant Groves did not have a written do-not-call policy while it was sending Plaintiff the unauthorized phone calls.

60. Upon information and belief, Defendant Groves did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

61. Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

62. Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT GROVES

63. Defendant Groves is vicariously liable for the telemarketing calls that generated the lead on their behalf.

64. The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

65. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

66.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

67.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

68.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

69.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

70.     To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

71.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

72.     Defendant Groves is legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

73.     Defendant Groves knowingly and actively accepted business that originated through illegal telemarketing.

74.     Defendant Groves knew (or reasonably should have known) that their telemarketer was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

75.     By hiring a company to make calls on its behalf, Defendant Groves "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

76.     Moreover, Defendant Groves maintained interim control over the actions of its telemarketers.

77. For example, Defendant Groves had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

78. Furthermore, Defendant Groves had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant Groves and the ability to require them to respect the National Do Not Call Registry.

79. Defendant Groves also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

80. Defendant Groves donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "mortgage refinance loans and cash out option" services in the abstract.

81. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

82. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

83. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

84. Defendant Groves' telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant Groves. Thus, the telemarketer had the "ability . . . to

enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

85. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

86. Defendant Groves is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

86. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing illegal phone calls.

87. Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

88. Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed by and/or on behalf of Defendant Groves.

89. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

90. The calls were to the Plaintiff's cellular phone (915) 540-5210, which is the Plaintiff's

14

personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

### Violations of the Texas Business and Commerce Code 305.053

91.     The actions of the Defendant violated the Texas Business and Commerce Code 305.053 by placing illegal phone calls to a cell phone which violates 47 USC 227(b). The calls by Defendant violated Texas law by placing illegal telemarketing calls to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

92.     The calls by Defendant violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

### CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

93.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

94.     Defendant Groves and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least five (5) times by placing non-emergency telemarketing calls to

Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

95. Plaintiff was statutorily damaged at least five (5) time under 47 U.S.C. § 227(b)(3)(B) by Defendant Groves by the telephone calls described above, in the amount of $500.00 per call.

96. Plaintiff was further statutorily damaged because Defendant Groves willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

97. Plaintiff is also entitled to and does seek an injunction prohibiting Defendant Groves and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

**COUNT TWO:**
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

98. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

99. Defendant Groves called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

100. Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by Defendant Groves by the telemarketing calls described above, in the amount of $500.00 per call.

101.   Plaintiff was further statutorily damaged because Defendant Groves willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

102.   Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**
**(Against All Defendants)**

103.   Plaintiff incorporates the forgoing allegations as if fully set forth herein.

104.   The foregoing acts and omissions of Defendant Groves and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];

   b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

   c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

17

105. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

106. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### Violations of The Texas Business and Commerce Code 305.053

107. Plaintiff incorporates the foregoing allegations as if set forth herein.

108. The foregoing acts and omissions of Defendant Groves and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053,** by making non-emergency telemarketing automated text messages to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

109. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

110. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA law;

C. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for five calls.

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for five calls.

E. An award to Plaintiff of damages, as allowed by law under the TCPA;

F. An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

G. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

August, 26, 2022,                           Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-540-5210
Salaiz.ep@gmail.com

 Gmail

JUDGE KATHLEEN CARDONE

Erik Salaiz <salaiz.ep@gmail.com>

---

### ***Refinance Contact Information***
1 message

**Salvador Amezcua** <sal.amezcua@grovescapital.com>                  Mon, Feb 14, 2022 at 2:42 PM
To: "salaiz.ep@gmail.com" <salaiz.ep@gmail.com>

**EP22CV0300**

Hey Eric,

Thanks for taking the time to speak to me today. Feel free to reach out when you have some time to speak and I am more than happy to go over some different loan scenarios with you. Thank you!


Thank you,

**Sal Amezcua**

Groves Capital, Inc.

Mortgage Banker



www.grovescapital.com

**Office** 949-771-2180 | **Fax** 949-266-0879

**MLO NMLS** 1654283 | **Company NMLS** 1678775

**Apply now:** https://salvadoramezcua1.floify.com/?lang=es

**Office** 4025 Stonebridge Ln, Rancho Santa Fe, CA 92091


*How did we do?*



Click to rate your experience with Groves Capital, Inc.

**"Exhibit A"**

*Beware! Cybercrime is on the rise!* Groves Capital, Inc., or the Escrow Company will never email or text wire instructions. If you receive wire instructions via email or text purporting to be from Groves Capital, Inc., or from your real estate agent or escrow officer claiming that they are from one of the companies involved, they are not valid. Call your Escrow Officer or Loan Agent immediately if your receive wire instructions via email or text! Any third party wiring instructions contained in documentation provided by others sent via email "from" the Escrow company have not been verified. Please call the account holder and verify before sending funds. Groves Capital, Inc., will not be held responsible nor liable for funds wired to the incorrect account.